IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BEDFORD COUNTY, VIRGINIA,<br>County Administration Building<br>122 East Main Street<br>Bedford, VA 24523,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC HOLDER,<br>Attorney General of the<br>United States of America;<br>THOMAS E. PEREZ,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Civil Action No. 1:11-cv-499<br>ESH-KLH-BAH |

## CONSENT JUDGMENT AND DECREE

1.    This action was initiated on March 8, 2011, by the Plaintiff Bedford County, Virginia ("Bedford County" or "the County"), against the Defendant Attorney General of the United States and the Defendant Assistant Attorney General, Civil Rights Division (collectively the "Attorney General").

2.    Bedford County is a governmental entity organized under the Constitution and laws of the Commonwealth of Virginia. Plaintiff Bedford County is a political subdivision of the State within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

3.    Bedford County is covered by the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c, based on a coverage determination under Section 4(b) made by the Attorney General and the Director of the Census, and published in the Federal Register. 30 Fed. Reg. 9897 (Aug. 7, 1965). By virtue of this coverage determination,

Bedford County, and all of its political subdivisions, including the Bedford County School Board, must receive preclearance under Section 5 of the Act for all changes enacted or implemented after November 1, 1964 that affect voting.

4. Through this action, the County seeks a declaratory judgment pursuant to the "bailout" provisions of Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1), declaring it exempt from coverage under Section 4(b) of the Act, 42 U.S.C. § 1973b(b). Bailout also exempts the jurisdiction from being subject to the preclearance provisions of Section 5 of the Act, 42 U.S.C. § 1973c.

5. This three-judge district Court has been convened as provided in 42 U.S.C. § 1973b(a)(5) and 28 U.S.C. § 2284 and has jurisdiction over this matter.

6. Section 4(a) of the Voting Rights Act provides that a political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions through an action for a declaratory judgment before this Court if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a) for both the ten years preceding the filing of the action, and throughout the pendency of the action. As set forth in Section 4(a)(1), the conditions the County must satisfy are as follows:

> (A) no such test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section [42 U.S.C. § 1973b(a)(1)(A)];
>
> (B) no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of such State or political subdivision or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) that denials or abridgements of the right to vote in contravention of the guarantees of subsection (f)(2) of this section have occurred anywhere in

2

the territory of such State or subdivision and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote [42 U.S.C. § 1973b(a)(1)(B)];

(C)  no Federal examiners or observers under subchapters I-A to I-C of this chapter have been assigned to such State or political subdivision [42 U.S.C. § 1973b(a)(1)(C)];

(D)  such State or political subdivision and all governmental units within its territory have complied with section 1973c of this title, including compliance with the requirement that no change covered by section 1973c of this title has been enforced without preclearance under section 1973c of this title, and have repealed all changes covered by section 1973c of this title to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment [42 U.S.C. § 1973b(a)(1)(D)];

(E)  the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under section 1973c of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under section 1973c of this title, and no such submissions or declaratory judgment actions are pending [42 U.S.C. § 1973b(a)(1)(E)]; and

(F)  such State or political subdivision and all governmental units within its territory-- (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under subchapters I-A to I-C of this chapter; and (iii) have engaged in other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process. [42 U.S.C. § 1973b(a)(1)(F)(i-iii)].

7. Section 4(a) also provides that the following additional requirements must be satisfied to obtain a bailout:

(2) To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and

voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation. [42 U.S.C. § 1973b(a)(2)].

(3) No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated. [42 U.S.C. § 1973b(a)(3)].

(4) The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices. [42 U.S.C. § 1973b(a)(4)].

8.  Finally, Section 4(a)(9) provides that the Attorney General can consent to entry of a declaratory judgment granting bailout "if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements of [Section 4(a)(1)]." 42 U.S.C. § 1973b(a)(9).

9.  The Attorney General has conducted a comprehensive and independent investigation to determine the County's entitlement to bailout. In so doing, he has, among other things, interviewed members of the local minority community, and reviewed a significant number of documents related to the County, including available background information and demographic data, minutes of the meetings of the Bedford County Board of Supervisors, records relating to voter registration and turnout in the County, and records of the County's preclearance submissions.

10. The Attorney General and Bedford County agree that the County has fulfilled the conditions required by Section 4(a) and is entitled to the requested declaratory judgment

allowing it to bail out of Section 5 coverage. Accordingly, the County and the Attorney General have filed a Joint Motion for Entry of this Consent Judgment and Decree.

## AGREED FACTUAL FINDINGS

11. Bedford County is located at the foot of the Blue Ridge Mountains in the heart of central Virginia.

12. In addition to Bedford County, there is one governmental subdivision located within the County, the Bedford County School Board, which is comprised of seven elected representatives from Bedford County and one appointed member from Bedford City.

13. According to the 2010 Census, Bedford County has a total population of 68,676 persons, of whom 62,035 (90.3%) are non-Hispanic white, 4,162 are non-Hispanic black (6.1%), 1,090 (1.6%) are Hispanic and 843 (1.2%) are Asian. According to the 2010 Census, Bedford County has a voting-age population of 53,371, of whom 48,649 (91.2%) are non-Hispanic white, 3,162 (5.9%) are non-Hispanic black, 662 (1.2%) are Hispanic and 499 (0.9%) are Asian.

14. Bedford County is governed by a seven-member County Board of Supervisors. The seven-member Board of Supervisors is elected from seven, single-member districts. The supervisors are elected in partisan elections to four-year staggered terms, and the Board elects its Chairman and Vice-Chairman each January at the Board's organizational meeting. Currently, Gary M. Lowry, Vice-Chairman of the Board, is the only minority member of the Bedford County Board of Supervisors. Though the non-white voting-age population in Bedford County is relatively small, the district which contains the greatest number of minority citizens is District Seven, the district represented by Mr. Lowry. According to the 2010 Census, 3.0% of the voting-age population of District One is non-white; 7.7% of the voting-age population of District Two; 10.8% of the voting-age population of District Three; 8.6% of the voting-age population of

5

District Four; 11.2% of the voting-age population of District Five; 3.6% of the voting-age population of District Six; and 12.1% of the voting-age population of District Seven, represented by Mr. Lowry, is non-white.

15. Gary Lowry is the only black candidate to run for public office in Bedford County in the past ten years, and he is the only black citizen to have ever served on the Board of Supervisors. There are no black members of the School Board, nor have there been any black candidates for the School Board in the last ten years. There have been no black members of the County Electoral Board in the past ten years. For the period spanning the last ten years, approximately five of the ninety-five (5.3%) Board-appointed officials who serve on various County boards and commissions were black citizens. While it is a small office, the Voter Registrar's Office has not employed any full-time black employees in the past ten years, although the office had a part-time black employee from 2000 to 2004.

16. Elections in Bedford County are conducted by the three-member Electoral Board and are administered by the County's General Registrar, who is appointed by the Electoral Board. Pursuant to State law, the Electoral Board is appointed by the Circuit Court to oversee the election laws and other regulations established by the State Board of Elections. Two Electoral Board members must be of the same political party that cast the highest number of votes for the Governor at the last election; the third member must be of the political party that cast the next-to-highest number of votes in the last gubernatorial election. Each Electoral Board member serves a three-year term.

17. Under Virginia law, the Electoral Board for each county is solely responsible for appointing poll workers, and local political parties are authorized to nominate poll workers where practicable. Va. Code Ann. § 24.2-115. In practice, however, the local parties of Bedford

County do not nominate poll workers. Bedford County poll workers are nominated instead by the Electoral Board, by the Registrar, or by other poll workers. After being nominated, poll workers are then appointed to the poll worker pool by the Electoral Board once per year, and their appointment may last up to three years. Whether the poll workers are actually called to work is left to the discretion of the polling place Chiefs, who are appointed by the Electoral Board. In the last ten years, the Electoral Board has appointed one black citizen as a to work as a polling place Chief, across a number of elections, and four black citizens to work as Assistant Chiefs in various recent elections. There is numerical evidence that the various Chiefs who have been appointed over the last ten years have appointed minority poll workers for elections conducted in the County. Since 2001, minority persons have served as poll officials in every election but one within Bedford County. The number of minority citizens working at the polls has risen since 2001, with minority citizens comprising 4.7% of poll officials since 2001, and 5.4% of poll officials from 2005 to the present. Minority citizens have comprised between 3.7% and 7.3% of all poll officials in elections conducted in the last five years. Efforts to solicit persons to serve as poll officials include flyers from the County Electoral Board directed specifically at recruiting new poll officials as well as the Commonwealth's voter registration application forms, which include a checkbox for persons interested in serving as poll officials. Bedford County commits to undertake continued efforts to recruit a diverse group of poll officials to serve in polling places throughout the county in future elections.

  18. Since the County does not record the race of its registered voters, it is unable to present evidence directly measuring minority voter participation, but the County has provided evidence of voter participation for elections since 2000. Current data show, for example, that a significant proportion of the County's voting-age population is registered to vote. The number

of persons registered to vote in the County as of April 2011 is, 47,160 which is 88.4% of the County's 2010 voting age population of 53,371. Voter registration has increased since April 2000, when the County had 34,972 registered voters. Hence, voter registration totals in the County have increased by 34.9% from 2000 to 2011.

19. Voter turnout in the County over the past decade has varied depending upon the types of elections held. In the presidential election years of 2004 and 2008, voter turnout was consistently high, with the 77.9% voter turnout for the 2008 presidential election slightly exceeding the 2004 election turnout of 76.1%. Turnout for the last three statewide elections for Governor has been fairly consistent, ranging from 47.8% to 53.4%.

20. Voter registration opportunities, as well as opportunities to fully participate in the political process in Bedford County, are readily and equally available to all citizens. Bedford County residents may obtain an application to register to vote at any location within Bedford County that offers voter registration forms, including the Office of Voter Registration, all Bedford County libraries, the County Administration building, and the County's social services offices. Voter registration forms are also available in the County at the Division of Motor Vehicle offices, on the website of the State Board of Elections (which is also linked on the County's website), all County post offices, the Department of Game and Inland Fisheries, and at all voting precincts on Election Day. The County Registrar's office is open from 8:30 a.m. to 5:00 p.m., Monday through Friday, as well as the two Saturdays prior to each general election and one Saturday before each primary or special election. Voter registration is also available by mail-in application.

21. The Bedford County Voting Registrar has conducted voter registration outreach to offer the opportunity for more Bedford County residents to apply to register to vote. For

example, the Bedford County Registrar of Voters works with the three local high schools to register students who are eighteen or who will be eighteen by the November general election. In addition, voters may register at the annual Centerfest event, a local street festival in Bedford City, and the County advertises this registration event in the local newspaper. The County's Voter Registration office also set up voter registration booths at local high school football games prior to the 2008 Presidential Election. Registration booths were located outside of the gates and were available to the general public. This event was advertised in local newspapers and on the local news channel. A registration booth was also set up at a local park in 2006 for a minority-sponsored Community Day event. The park was open for general public access, and the registration event was publicized in the local newspapers.

22. Bedford County and County School Board have made nineteen submissions to the Attorney General under Section 5 of the Voting Rights Act in the ten years preceding this action, and the Attorney General has not interposed an objection to any of these submissions. The Attorney General reviewed the records of Bedford County in the course of considering the County's bailout request, and no voting changes were discovered in either the records of the Board of Supervisors or the records of the County School Board that had not been submitted for preclearance approval in a timely manner. Hence, the Attorney General's investigation indicates that the County has not enforced any changes prior to receiving preclearance during the previous ten years and during the pendency of this action.

23. The County has publicized the intended commencement of this action and a proposed settlement of the action as required by Section 4(a)(4) of the Act prior to its being filed. Notices of the bailout and bailout settlement were posted on the County's website, all County post offices, as well as in County offices, the courthouse, and libraries. Notice of the bailout was

also published in <u>The News and Advance</u> in Lynchburg, <u>The Bedford Bulletin</u> in Bedford, and <u>The Roanoke Times</u> in Roanoke.

    24.    The Attorney General has determined that it is appropriate to consent to a declaratory judgment allowing bailout by the County, pursuant to Section 4(a)(9) of the Voting Rights Act. The Attorney General's consent in this action is based upon its own independent factual investigation of the County's fulfillment of all of the bailout criteria, and consideration of all of the circumstances of this case, including the views of minority citizens in the County and surrounding areas, and the absence of racial discrimination in the electoral process within the County. This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance and preventing the use of racially discriminatory voting practices would not be compromised by such consent.

AGREED FINDINGS ON STATUTORY BAILOUT CRITERIA

    25.    The County and the County School Board are covered jurisdictions subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c. Under Section 5 of the Act, these County governmental entities are required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date. There are no other governmental subdivisions within the County's territory for which it is responsible or which must request bailout at the same time as the County, within the meaning of Section 4(a), 42 U.S.C. § 1973b(a).

    26.    During the ten years preceding the filing of this action and during the pendency of this action, there has been no test or device as defined in Section 4(c) of the Voting Rights Act

used within the County for the purpose or with the effect of denying or abridging the right to vote on account of race or color. During the relevant time period there is also no indication that any person in Bedford County has been denied the right to vote on account of race or color. 42 U.S.C. § 1973b(a)(1)(A).

27.     During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred anywhere in Bedford County.  Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds.  No action is presently pending alleging such denials or abridgements of the right to vote. 42 U.S.C. § 1973b(a)(1)(B).

28.     During the ten years preceding the filing of this action, and during the pendency of this action, no federal examiners or observers have been assigned to Bedford County. 42 U.S.C. § 1973b(a)(1)(C).

29.     During the ten years preceding this action, and during the pendency of this action, the County and County School Board made nineteen administrative submissions to the Attorney General for review under Section 5, and the Attorney General did not object to any of these submissions.  Moreover, there is no evidence that the County enforced any changes that had an actual effect on voting in elections prior to receiving preclearance under Section 5. 42 U.S.C. § 1973b(a)(1)(D).

30.     During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the County to repeal any voting changes to which the Attorney General has objected or to which this Court has denied a declaratory judgment, since no such objection or denials have occurred. 42 U.S.C. § 1973b(a)(1)(D).

31. During the ten years preceding this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of the County for administrative review under Section 5. No such administrative submissions by or on behalf of the County are presently pending before the Attorney General. The County has never sought judicial preclearance from this Court under Section 5. Thus, this Court has never denied Bedford County a declaratory judgment under Section 5, nor are any such declaratory judgment actions now pending. 42 U.S.C. § 1973b(a)(1)(E).

32. During the ten years preceding the filing of this action, and during the pendency of this action, Bedford County has not employed methods of election which inhibit or dilute equal access to the electoral process. 42 U.S.C. § 1973b(a)(1)(F)(i).

33. During the ten years preceding the filing of this action, and during the pendency of this action, there is no evidence that anyone participating in the County's elections has been subject to intimidation or harassment in the course of exercising rights protected under the Voting Rights Act. Constructive steps have been undertaken by Bedford County to avoid intimidation or harassment in Bedford County elections, such as by appointing a more diverse group of poll officials for elections in the County in recent years, and, as a precaution on Election Day 2008, commissioning additional law enforcement officers to patrol the County. 42 U.S.C. § 1973b(a)(1)(F)(ii).

34. All voter registration and all County elections have been conducted solely by the Electoral Board and Voting Registrar throughout the ten years preceding the filing of this action and through the present time. There is evidence of constructive efforts by the Board and Registrar to expand the opportunity for convenient registration and voting for every person of voting age. The numerical evidence indicates that the County polling place Chiefs have

appointed minority citizens to serve as poll officials in elections in the jurisdiction." 42 U.S.C. § 1973b(a)(1)(F)(iii).

35. Bedford County has presented available information regarding rates of voter registration and voter participation over time. 42 U.S.C. § 1973b(a)(2).

36. During the ten years preceding the filing of this action, and during the pendency of this action, the County has not engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color. 42 U.S.C. § 1973b(a)(3).

37. Bedford County has provided public notice of its intent to seek a Section 4(a) declaratory judgment, as well as its intention to reach a settlement of the bailout action with the United States Attorney General. Additionally, notices of the bailout and bailout settlement were also posted on the County's website, as well as in County offices, courthouse, and libraries. Notice of the bailout and the County's intention to reach a settlement of the bailout action were published in <u>The News and Advance</u> in Lynchburg, <u>The Bedford Bulletin</u> in Bedford, and <u>The Roanoke Times</u> in Roanoke. 42 U.S.C. § 1973b(a)(4).

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1. The plaintiff Bedford County is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

2. The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and the plaintiff Bedford County and the Bedford County School Board are exempted from coverage pursuant to Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), 42 U.S.C. § 1973b(a)(5). This action shall be closed and placed on this Court's inactive docket,

subject to being reactivated upon application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).

3. Each party shall bear its own costs.

Entered this ___ day of _____, 2011.


_____
UNITED STATES CIRCUIT JUDGE


_____
UNITED STATES DISTRICT JUDGE


_____
UNITED STATES DISTRICT JUDGE

*Agreed and Consented To:*

  /s/ J. Gerald Hebert_____
J. GERALD HEBERT
D.C. Bar No. 447676
191 Somervelle Street, #405
Alexandria, VA 22304
Telephone:  (703) 628-4673
hebert@voterlaw.com


G. CARL BOGGESS
County Attorney for Bedford County
122 East Main Street, Suite 201
Bedford, Virginia 24523
(540) 587-5699 (phone)
(540) 586-9117 (fax)


*Counsel for Plaintiff*
*County of Bedford County, Virginia*

Dated:  July 27, 2011

*Agreed and Consented To:*

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division


RONALD C. MACHEN, JR.
United States Attorney


  /s/ Robert Popper
T. CHRISTIAN HERREN, JR.
ROBERT POPPER
robert.popper@usdoj.gov
JOSHUA ROGERS
joshua.rogers@usdoj.gov
CHRISTY MCCORMICK
christy.mccormick@usdoj.gov
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7254 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone:  (800) 253-3931
Facsimile:   (202) 307-3961

*Counsel for Defendants*
*Eric H. Holder, Jr.*
*Attorney General of the United States*
*and Thomas E. Perez,*
*Assistant Attorney General*
*Civil Rights Division*

Dated:  July 27, 2011